DORSEY et al., Appellants,

v.

FEDERAL INSURANCE COMPANY et al., Appellees.

[Cite as *Dorsey v. Federal Ins. Co.*, 154 Ohio App.3d 568, 2003-Ohio-5144.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 02 JE 26.

Decided Sept. 26, 2003.

Sharon N. Bogarad, for appellants.

Vorys, Sater, Seymour & Pease and John P. Gartland, for appellee Federal Insurance Co.

Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes and Daniel P. White-head, for appellee County Risk Sharing Authority.

WAITE, Presiding Judge.

{¶ 1} This case involves a dispute over whether or not two people injured in an automobile accident are entitled to receive underinsured motorist ("UIM") benefits under the insurance coverage maintained by their employers. The injured plaintiffs believe that they should receive UIM benefits based on the principles set forth in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. The issues in the instant case are not analogous to those in the *Scott–Pontzer* case because neither policy is governed by the mandatory aspects of the uninsured/underinsured ("UM/UIM") statute, R.C. 3937.18. Thus, the decision of the Jefferson County Court of Common Pleas in favor of the insurers is affirmed.

{¶ 2} On December 15, 1997, appellant Herbert Dorsey was driving his 1991 Chevy Blazer in Toronto, Ohio, with appellant Laquishia Dorsey sitting in the passenger seat. Appellants were struck by a vehicle driven by Ronald Paris. Both appellants sustained numerous injuries.

{¶ 3} It is undisputed that appellants were engaged in their own personal affairs when the accident happened and were not acting in the course or scope of employment. Mr. Dorsey was employed by the Jefferson County Sheriff's Department, and Mrs. Dorsey worked for Banc One Corporation.

{¶ 4} Mr. Dorsey maintained $50,000 in UIM coverage through his personal automobile policy issued by Westfield Insurance Co. ("Westfield").

{¶ 5} On October 29, 2001, appellants filed a declaratory judgment action in the Jefferson County Court of Common Pleas. Appellants alleged that they had additional losses not covered by Mr. Paris's insurance policy, which had paid its limit of $100,000. Appellants claimed that they were owed UIM benefits under their personal Westfield policy and the insurance policies maintained by each of their employers.

{¶ 6} Mr. Dorsey claimed coverage as an employee of the Jefferson County Sheriff's Department, which was a member of a self-insurance program created by the Ohio County Risk Sharing Authority ("CORSA"). The CORSA policy provided $250,000 in UIM coverage.

{¶ 7} Mrs. Dorsey's employer, Banc One, held a policy issued by Federal Insurance Co. ("Federal"). The Federal policy contained $2,000,000 in UIM coverage. Mrs. Dorsey believed that she was insured under the Federal policy.

{¶ 8} On June 4, 2002, the trial court filed its ruling on the declaratory judgment action. The trial court held that Westfield was required to pay the policy limits of Mr. Dorsey's personal automobile policy. The court decided that the CORSA policy was not "insurance" as set forth in R.C. 3937.18. The court held that CORSA was not required to offer UIM coverage and was not subject to the requirements of R.C. 3937.18. Even though the CORSA policy was not required to offer UIM coverage, the court determined that the policy contained $250,000 in UIM coverage. The court held that UIM coverage was excluded under the CORSA policy unless the employee was acting within the scope of employment or on behalf of the business of Jefferson County. It was undisputed that Mr. Dorsey was not acting in the scope of employment, and therefore, the court concluded, there was no UIM coverage under CORSA.

{¶ 9} The court rejected Federal's argument that it was a self-insurer and therefore exempt from the requirements of R.C. 3937.18. Federal had argued that the policy was a mere "fronting agreement" and that Banc One was actually liable for all losses. Federal pointed out that the liability limit and the deductible were the same amount and that Banc One, rather than Federal, was liable for any claims under the policy. The court acknowledged that self-insurers are not bound by the requirements of R.C. 3937.18. The court reasoned that the cases dealing with self-insurance required more than mere proof that the policy liability

limit and policy deductible were for the same amount. The court held that the Federal policy was not self-insurance and was subject to R.C. 3937.18. Nevertheless, the court found that appellants were excluded from coverage because they were driving an excluded automobile according to the terms of the policy. The court also found that appellants were excluded under the "drive other car" exclusion. The court rendered judgment in favor of CORSA and Federal and against Westfield. This timely appeal followed.

{¶ 10} Westfield subsequently settled with appellants and is not a party to this appeal.

## ISSUES ON APPEAL

{¶ 11} Appellants did not prepare any formal assignments of error. Appellants disagree with the way the trial court interpreted both the CORSA policy and the Federal policy. Appellants believe that the policies are ambiguous and should be interpreted in the insureds' favor in order to provide coverage.

{¶ 12} The issues raised by appellants all involve the interpretation of two insurance contracts. If the terms of an insurance policy are unambiguous, the interpretation of the policy is a matter of law to be decided by the court and is reviewed de novo on appeal. *Murray v. All Am. Ins. Co.* (1997), 121 Ohio App.3d 29, 31, 698 N.E.2d 1027. "Because an insurance policy is a written contract, we look to its terms to determine the intention of the parties concerning coverage. In so doing, the court must give the words in the policy their plain and ordinary meaning." *Minor v. Allstate Ins. Co., Inc.* (1996), 111 Ohio App.3d 16, 20, 675 N.E.2d 550, 553. Furthermore, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488. The court decides whether a provision should be construed against the insurer and in favor of the insured. Id.

{¶ 13} Appellants believe that the trial court should have found ambiguities in the two polices and should have construed those ambiguities, as a matter of law, in appellants' favor. These purely legal issues are reviewed de novo on appeal.

## THE FEDERAL INSURANCE POLICY

{¶ 14} With respect to Federal, appellants assert that they are both covered by the UIM provisions of the policy based on the holdings of *Scott–Pontzer*, supra. The Federal policy provides insurance for a corporation and defines the corporation as "you," just as in *Scott–Pontzer*. The Ohio Supreme Court in the *Scott–Pontzer* decision essentially held that an automobile liability policy that lists a

corporation as the only insured party, and that refers to the corporation as "you" in the policy, must also include the employees of the corporation as insured persons for purposes of UM/UIM coverage under R.C. 3937.18. Appellants contend that the Federal policy was issued to a corporation and that the word "insured" in the policy is defined as "you" and any "family member." (Endorsement 358j, Section B.) Appellants argue that no other section of the policy excludes coverage for either of them. The exclusions relied upon by the trial court, according to appellants, were superceded by the language in the Federal policy's "Ohio Uninsured Motorists Coverage" Endorsement CA 358j. Appellants believe that Endorsement 358j does not contain any enforceable limitation or exclusion of coverage and that, therefore, appellants should receive $2,000,000 in UIM coverage from Federal.

{¶ 15} Federal makes a number of arguments in rebuttal. We address these arguments out of order for the sake of clarity. Federal's most convincing argument is that the policy at issue is not an insurance policy but rather a "self-insurance" policy and is not subject to R.C. 3937.18 or the cases (including *Scott–Pontzer*) interpreting that statute. This is important because the requirements of the 1994 version of R.C. 3937.18 applicable to this case apply only to insurance policies and not to self-insurance situations:

{¶ 16} "(A) *No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death* suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle *shall be delivered or issued for delivery in this state* with respect to any motor vehicle registered or principally garaged in this state *unless both of the following coverages are provided* to persons insured under the policy for loss due to bodily injury or death suffered by such persons:

{¶ 17} "(1) Uninsured motorist coverage, * * *

{¶ 18} "(2) Underinsured motorist coverage, * * *

{¶ 19} "(C) *The named insured may only reject or accept both coverages offered under division (A)* of this section." (Emphasis added.)

{¶ 20} In *Scott–Pontzer*, UIM coverage arose as a matter of law because of the requirements of R.C. 3937.18. The Ohio Supreme Court held in *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, that the mandatory offer and rejection provisions of R.C. 3937.18 do not apply to self-insurers. Self-insurance is "[t]he practice of setting aside a fund to meet losses instead of insuring against such through insurance." Black's Law Dictionary (6th Ed.1990) 1360. In *Grange*, the Supreme Court reasoned that R.C. 3937.18 does not apply to self-insurers because this "would result in the absurd 'situation where one has the right to reject an

offer of insurance to one's self * * *.'" Id. at 49, 21 OBR 331, 487 N.E.2d 310, quoting *Snyder v. Roadway Express, Inc.* (1982), 7 Ohio App.3d 218, 7 OBR 279, 455 N.E.2d 11.

{¶ 21} R.C. 3937.18 also does not apply to self-insurers "in the practical sense." *Grange*, 21 Ohio St.3d at 49, 21 OBR 331, 487 N.E.2d 310. Self-insurance "in the practical sense" refers to an entity that continues to bear the risk of loss for liability claims but has not become a self-insurer in the legal sense as contemplated by Ohio's motor vehicle licensing and registration laws, particularly R.C. 4509.45(D) and 4509.72.

{¶ 22} This court recently held that a company that executed a "Reimbursement Indemnification and Security Agreement" with an insurer must be considered self-insured in the practical sense and was not subject to the requirements of R.C. 3937.18. *Cincinnati Ins. Co. v. Torok*, 152 Ohio App.3d 398, 2003-Ohio-1764, 787 N.E.2d 1257, ¶ 13. The *Cincinnati Ins. Co.* opinion agreed with a number of other recent judicial opinions concluding that an automobile liability policy with a matching liability and deductible amount (known as a "fronting policy") should also be treated as self-insurance in the practical sense. Id. at ¶ 17–18, citing *Lafferty v. Reliance Ins. Co.* (S.D.Ohio 2000), 109 F.Supp.2d 837; *McCollum v. Continental Ins. Co.* (Apr. 9, 1993), 6th Dist. No. L–92–141, 1993 WL 382455; *Straubhaar v. Cigna Prop. & Cas. Co.*, 8th Dist No. 81115, 2002-Ohio-4791, 2002 WL 31040683.

{¶ 23} A "fronting policy" is "a form of self-insurance in which the deductible is identical to the limits of liability, and the insurance company acts only as surety that the holder of the fronting policy will be able to pay any judgment covered by the policy." *Landers v. Lucent Technologies, Inc.*, 8th Dist. Nos. 81506 and 81531, 2003-Ohio-3326, 2003 WL 21468908. In a fronting policy, the insured essentially rents an insurance company's licensing and filing capabilities, but the insurance company does not actually pay any claims. *Tucker v. Wilson*, 12th Dist. No. CA 2002–01–002, 2002-Ohio-5142, 2002 WL 31155132.

{¶ 24} The record in this case reflects that the Federal policy has deductible and liability limits in the same amount, i.e., $2,000,000. Banc One, and not Federal, is ultimately responsible for paying any liability claims against the Federal policy. Applying the reasoning of *Cincinnati Ins. Co.*, neither Banc One nor Federal are bound by the mandatory provisions of R.C. 3937.18, and UIM coverage cannot be implied in the Federal policy as a matter of law. More importantly, the Ohio cases interpreting R.C. 3937.18 cannot be applied to interpret the UIM provisions of the policy. *Cincinnati Ins. Co.* at ¶ 19. An insurance company may provide UM/UIM coverage for self-insurers, but the coverage provisions would be analyzed using ordinary contract principles and not principles derived from cases dealing with violations of R.C. 3937.18.

{¶ 25} In what amounts to dicta, the trial court held that the Federal policy could not be found to be self-insurance in the practical sense without something more than mere proof of the matching liability and deductible limits. The trial court's opinion is inconsistent with this court's recent *Cincinnati Ins. Co.* holding. The fact that the Federal policy has matching deductible and liability limits is, in and of itself, proof that the insurance company is not responsible to pay any liability claim. A deductible is, by definition, "[t]he portion of an insured loss to be borne by the insured before he is entitled to recovery from the insurer." Black's Law Dictionary (6th Ed.1990) 413. Banc One and Federal did not need evidence of any further agreement to indemnify Federal, because these matching limits alone show Federal not liable to pay any liability claims. Therefore, we must conclude that the Federal policy is self-insurance in the practical sense and is not subject to mandatory provisions of Ohio's UIM laws, including R.C. 3937.18. As we held in *Cincinnati Ins. Co.*, where we are presented with self-insurance in the practical sense, "the UM/UIM provisions of R.C. 3937.18 and the case law interpreting the statute are inapplicable." Id. at ¶ 19.

{¶ 26} Even though cases such as *Scott–Pontzer* do not apply to the Federal policy, Federal does not seem to deny that the definition of "you" in the policy includes both Mrs. Dorsey as an employee of Banc One and Mr. Dorsey as a family member, just as in *Scott–Pontzer*. Federal argues that other provisions of the policy limit the definition of "you" and exclude appellants under the facts of this case. Federal argues that Endorsement 358j excludes UIM coverage for bodily injury sustained by "[y]ou while 'occupying' * * * any vehicle owned by you that is not a covered 'auto' for Uninsured Motorists Coverage under this Coverage Form." This is generally known as the "other owned vehicle" exclusion. Federal contends that appellants were occupying an "other owned vehicle" at the time of the accident and are excluded from coverage for that reason.

{¶ 27} Federal also contends that Mr. Dorsey's truck is not a "covered auto" because the definition of "covered auto" included only automobiles that were required by Ohio law to have UIM coverage:

{¶ 28} "SECTION I—COVERED AUTOS

{¶ 29} "6 = OWNED 'AUTOS' SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those 'autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage." (Federal policy, Business Auto Coverage Form, CA 184, p. 1.)

{¶ 30} The Federal policy declarations page limits UIM coverage to those vehicles defined as "covered autos" under Section 6 of the "Business Auto Coverage Form."

■ {¶ 31} The "Ohio Uninsured Motorists Coverage" Endorsement, CA 358j, also restricts coverage to any "covered 'auto' licensed or principally garaged in * * * Ohio." As already mentioned, a "covered auto" under the "Business Auto Coverage" section of the policy refers solely to vehicles that are required to have (cannot be rejected) UIM coverage. Under these definitions, appellants do not qualify for UIM coverage because UIM coverage can be rejected in Ohio. Assuming that Mr. Dorsey's vehicle would have otherwise qualified for UIM benefits, the Federal policy provides no UIM coverage for vehicles when UM/UIM coverage can be rejected. (Endorsement 184, Section 1[A][6].)

{¶ 32} The combined effects of these provisions excludes appellants from UIM coverage if the provisions are enforceable.

{¶ 33} Federal's argument hinges on the fact that it is not bound by the case law interpreting R.C. 3937.18. If Federal were subject to the case law surrounding R.C. 3937.18, its argument would fail completely. The Ohio Supreme Court has specifically held that the "other owned vehicle" exclusion is not enforceable when UM/UIM coverage is provided under the requirements of the 1994 version of R.C. 3937.18:

■ {¶ 34} "An automobile liability insurance policy provision which eliminates uninsured motorist coverage for persons insured thereunder who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. 3937.18 and is therefore invalid." *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, paragraph three of the syllabus.

{¶ 35} *Martin* was interpreting the same version of R.C. 3937.18 applicable to the case now under review. Based on our conclusion that the Federal policy is not subject to the requirements of R.C. 3937.18, it is likewise not subject to the *Martin* holding.

{¶ 36} Appellants maintain that Federal provides UIM coverage by its very terms, above and beyond the requirements of R.C. 3937.18. Appellants are aware of the dozens of endorsements attached to the Federal policy. Appellants believe that Endorsement 358j, entitled "Ohio Uninsured Motorists Coverage," supercedes all other relevant endorsements and clearly provides appellants with UIM coverage. Appellants are incorrect, as we have already determined above. Endorsement 358j does not provide either appellant with UIM coverage. There is no need for us to decide whether certain other endorsements, including CA 287, CA 561, and CA 777, preclude coverage because appellants have not met their threshold burden of producing language in any section of the Federal policy under which they can claim coverage in the first instance.

### THE CORSA POLICY

{¶ 37} Appellants raise a number of separate arguments with respect to the CORSA policy. Mr. Dorsey believes that he has a valid claim under CORSA. His argument focuses solely on one sentence within the "Automobile Liability" section of the policy:

{¶ 38} "C—UNINSURED/UNDERINSURED MOTORIST: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned that Uninsured/Underinsured Motorist Insurance shall be afforded in accordance with the law of the State in which the accident occurs."

{¶ 39} Mr. Dorsey looks at this one sentence in isolation from the rest of the policy and finds ambiguity concerning the definition of the person or persons actually protected by UIM coverage. Mr. Dorsey states that he, as an employee of Jefferson County, must be an insured, based on an extension of the holding in *Scott–Pontzer.* His theory is that UIM coverage, according to R.C. 3937.18 and *Scott–Pontzer,* protects persons rather than corporations. Mr. Dorsey believes that he should receive UIM protection because the policy is ambiguous as to who is covered and because ambiguities are resolved in favor of the insured. He believes that CORSA cannot impose other policy definitions or exclusions on him once he receives UIM coverage by operation of law. According to Mr. Dorsey, he was not required to be acting in the scope of employment at the time of the accident, because he is not bound by any more restrictive definitions found elsewhere in the policy.

{¶ 40} CORSA contends that appellants cannot obtain UIM coverage as a matter of law because the CORSA policy is not "insurance" as defined by Ohio law. CORSA maintains that it is authorized, under R.C. 2744.081(A), to provide self-insurance for its own insurance needs. R.C. 2744.081(E) states:

{¶ 41} "(2) A joint self-insurance pool is not an insurance company. Its operation does not constitute doing an insurance business and is not subject to the insurance laws of this state."

{¶ 42} CORSA asserts that it is not subject to R.C. 3937.18 or the case law interpreting that statute because of the exemption provided by R.C. 2744.081(E).

{¶ 43} CORSA does not dispute that Mr. Dorsey is covered by the UIM provision of the policy. CORSA states in its brief that "the trial court was correct when it held as follows: The coverage to an assured includes its employees." CORSA argues, though, that employees are covered by the policy specifically and intentionally and not through judicial interpretation. CORSA argues that the UIM section of the policy obviously applies to anyone qualifying as "assured" under the policy, even though the UIM section does not actually use the word "assured." The CORSA policy limits the definition of "assured" to the

following types of employees: (1) those acting in the scope of their employment; (2) those using a county-owned vehicle; or (3) those using a noncounty-owned vehicle while furthering the business of the county. It is clear that Mr. Dorsey does not meet any of these three conditions, is not an "insured" or "assured" under the policy, and thus, does not qualify for UIM coverage. In these arguments, CORSA is correct.

{¶ 44} CORSA is a county risk-sharing authority and is not subject to Ohio's insurance laws according to the plain meaning of R.C. 2744.081(E). That also means that CORSA is not subject to the mandatory provisions of R.C. 3937.18 and case law, including the *Scott–Pontzer* decision, interpreting that statute. *Ohio Govt. Risk Mgt. Plan v. Cty. Risk Sharing Auth., Inc.* (1998), 130 Ohio App.3d 174, 180, 719 N.E.2d 992, appeal not allowed (1999), 84 Ohio St.3d 1505, 705 N.E.2d 1245; *Public Entities Pool of Ohio v. Sexton* (Mar. 31, 2000), 2nd Dist. No. 17849, 2000 WL 331821, appeal not allowed (2000), 89 Ohio St.3d 1470, 732 N.E.2d 1001; *Adams v. Thomson Newspapers, Inc.* (Nov. 25, 1996), 4th Dist. No. 95 CA 2357, 1996 WL 689128, appeal not allowed (1997), 78 Ohio St.3d 1463, 678 N.E.2d 220.

{¶ 45} If CORSA is not subject to former R.C. 3937.18, then it is not required to offer UIM coverage. Neither can such coverage be imposed as a matter of law in the way it was imposed in *Scott–Pontzer*, because *Scott–Pontzer* is premised on the mandatory aspects of former R.C. 3937.18.

{¶ 46} Furthermore, CORSA does not subject itself to the requirements of R.C. 3937.18 by contract. It offers UIM coverage only "in accordance with the law of the State in which the accident occurs." (Section 3[C], p. 21.) The law of the state of Ohio is that the CORSA policy is not subject to the mandatory aspects of R.C. 3937.18.

{¶ 47} Appellants are not arguing that UIM coverage should be imposed on CORSA as a matter of law in exactly the way it was imposed in *Scott–Pontzer*. One crucial aspect of *Scott–Pontzer* that appellants would apply to the CORSA policy, though, is its holding regarding how to resolve ambiguities concerning the definition of the insureds.

{¶ 48} Appellants contend that there is an ambiguity in the UIM section of the CORSA policy, albeit a different ambiguity from the one that occurred in *Scott–Pontzer*. Appellants contend that the UIM provision does not refer to any insured at all. As noted above, the UIM section of the CORSA policy is only one sentence long, and it does not use the word "assured" or any other word to specifically describe who is protected by UIM coverage. According to appellants, UIM coverage arises because the UIM paragraph is ambiguous in that it does not define who is actually protected by the UIM coverage.

{¶ 49} In *Scott–Pontzer*, an ambiguity was created when the policy defined the insured as a corporation and then referred to the corporation by the word "you" throughout the policy. *Scott–Pontzer* held that UIM coverage under R.C. 3937.18 was designed to protect people and not corporations. *Scott–Pontzer*, 85 Ohio St.3d at 664, 710 N.E.2d 1116, citing *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, syllabus. The Supreme Court held that "policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured." *Scott–Pontzer*, 85 Ohio St.3d at 664–665, 710 N.E.2d 1116. The court held that, as a matter of law, the employees of a corporation would also be covered by the UIM provisions of a policy that defined an "insured" solely as a corporation. Id.

{¶ 50} Appellants argue that the UIM provision in the CORSA policy must protect someone. Appellants submit that the only persons who can be protected are the individual employees of the various governmental entities covered by the policy. Mr. Dorsey contends that this alleged ambiguity should be resolved in his favor.

{¶ 51} CORSA argues that the UIM provision only covers an "assured" as defined by the policy. The policy defines "assured" as follows:

{¶ 52} "I. WHO IS AN ASSURED.

{¶ 53} "It is agreed that *the unqualified word 'Assured'* wherever used in this Insurance *includes* not only the Named Assured but also:-

{¶ 54} "1. *any* official, trustee, Director, Officer, Partner, Volunteer or *employee* of the Named Assured *while acting within the scope of his duties* as such, and any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of written contract or agreement to provide insurance such as is offered by this Insurance, but only in respect of operations by or on behalf of the Named Assured;

{¶ 55} "2. under Section III any person defined in 1. above while using an owned automobile of the Named Assured or a hired or non-owned automobile *whilst acting on behalf of or using the automobile in the business of the Named Assured.*" (Emphasis added.) (CORSA POLICY, at 5.)

{¶ 56} CORSA argues that the accident did not take place in the course of Mr. Dorsey's employment or in furtherance of the business of Jefferson County. Therefore, CORSA concludes, Mr. Dorsey's accident cannot be covered by the CORSA policy because Mr. Dorsey was not an "assured" when the accident occurred.

{¶ 57} Mr. Dorsey does not dispute that his accident occurred outside the scope of his employment. His argument is that the "scope of employment" provision on

page 5 of the policy does not apply to him. The reason it does not apply, Mr. Dorsey contends, is that the UIM section of the policy should be read in isolation and is only subject to the limitations stated in that specific part of the policy. Mr. Dorsey points to the following UIM language in support of this argument: "Underwriters hereby agree, subject to the limitations, terms and conditions *hereunder* mentioned * * *." (Emphasis added.) (Section 3[A], p. 5.) Mr. Dorsey asserts that the word "hereunder" means that no other limitations apply to the UIM coverage except those limitations listed after the word "hereunder." The only limitation to UIM coverage listed in the policy is that the coverage "shall be afforded in accordance with the law of the State in which the accident occurs." (CORSA policy, p. 21.)

{¶ 58} Mr. Dorsey believes that CORSA is required to abide by Ohio caselaw, including the *Scott–Pontzer* opinion. Mr. Dorsey is correct that appellate and Supreme Court decisions are applied retrospectively in most instances. *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467. Nevertheless, it is not automatically true that *Scott–Pontzer* applies to every UIM case. Mr. Dorsey has not pointed to any reason for applying *Scott–Pontzer* here. CORSA is not subject to the mandatory requirements of former R.C. 3937.18, in contrast to the policies at issue in *Scott–Pontzer.* CORSA does not subject itself to the requirements of R.C. 3937.18. It offers only UIM coverage "in accordance with the law of the State in which the accident occurs." (Section 3[C], p. 21.) It has already been established that CORSA is not subject to Ohio's insurance laws, including R.C. 3937.18. See, e.g., *Ohio Govt. Risk Mgt. Plan,* 130 Ohio App.3d at 180, 719 N.E.2d 992.

{¶ 59} The only reasonable interpretation of this policy is that advanced by CORSA and adopted by the trial court. Appellants' attempt to interpret the UIM provision in isolation from the rest of the policy is contradictory and unreasonable. According to R.C. 3937.18, UIM coverage is offered to persons who are protected by an automobile liability policy. In fact, one would only expect UIM coverage to be an issue when there is an underlying automobile liability policy. In *Scott–Pontzer,* it so happened that the UIM section of the policy modified the definition of "insured" that was contained in the liability section of the policy. It does not follow, though, that a UIM policy is invalid if it does not contain its own separate definition of "insured" or "assured" distinct from the liability section of the policy. It is apparent that all coverages under this policy, including the UIM coverage, apply to the "insured" or "assured" as previously defined in the liability portion of the policy.

{¶ 60} If Mr. Dorsey is not an "insured" or "assured" as defined somewhere in the policy, he cannot be an "insured" or "assured" with respect to the UIM coverage. He never reaches the UIM section of the policy if he is not an

"assured" in the first place. The UIM section of the policy does not redefine who is and who is not an "assured," and the only logical way to read the policy is to apply the definition of "assured" found on page 5 of the General Definitions. Page 5 of the CORSA policy clearly states that the definition of "assured" applies "wherever used in this Insurance." The policy states that automobile liability coverage and automobile medical payments are provided for the "assured" as defined on page five of the policy. These coverages immediately precede the UIM paragraph, and it is reasonable to assume that the same "assured" is covered by the very next sentence containing the UIM provisions.

{¶ 61} Furthermore, appellants do not follow through with the logic of their own argument. Appellant's interpretation of the UIM provision should lead to the conclusion that there is no UIM coverage for any accident occurring in Ohio. This conclusion is compelled under appellants' reasoning because the CORSA policy provides UIM coverage only "in accordance with the law of the State in which the accident occurs." (Section 3[C], p. 21.) Under Ohio law, the CORSA policy is not insurance and is not bound by R.C. 3937.18. CORSA is not required to offer or provide any UIM coverage. Therefore, if the UIM provision of the CORSA policy requires only the amount of UIM coverage required by Ohio law, then the CORSA policy provides no UIM coverage in Ohio. Appellants' argument becomes self-defeating.

{¶ 62} Based on the above, we can only conclude that CORSA's arguments are correct and Mr. Dorsey was not entitled to UIM coverage under the CORSA policy.

## CONCLUSIONS

{¶ 63} Although appellants would like this appeal to be governed by cases that interpret R.C. 3937.18, neither the CORSA policy nor the Federal policy are bound by that case law. The CORSA policy is specifically exempted by statute from Ohio's insurance laws. The Federal policy is self-insurance "in the practical sense" and thus outside the scope of R.C. 3937.18. There is no ambiguity in the UIM section of CORSA policy as to the persons covered because the UIM section has logic only if it is referring to an "assured" under the policy definitions. Mr. Dorsey is excluded from UIM coverage in the CORSA policy because the accident did not occur within the scope of his employment, in a covered automobile, or in furtherance of the business of Jefferson County. Appellants are likewise not covered under the UIM provisions of the Federal policy because the UIM sections of the policy only pertain to "covered autos," and Mr. Dorsey's car does not qualify as a covered auto under any provision of the policy. Because we

must reject all of appellants' arguments, we affirm the judgment of the trial court.

Judgment affirmed.

GENE DONOFRIO and VUKOVICH, JJ., concur.