OPINION
{¶ 1} This case involves a dispute over uninsured motorist coverage ("UM") arising from an automobile accident. The plaintiff in this case is Jeanette Belt, who was driving a car owned by one of her employers, Darlene Rogers, at the time of the accident. Ms. Belt was also employed by Senior Workers Action Program ("SWAP") at the time of accident.
 {¶ 2} Ms. Belt filed a personal injury complaint against the tortfeasor and filed a UM claim against Ms. Rogers' automobile liability insurer, Nationwide Property and Casualty Insurance Co. ("Nationwide"). Nationwide later filed a third-party complaint against Aetna Casualty and Surety Co., which has since changed its name to Travelers Casualty and Surety Company ("Travelers"). Travelers had issued a business auto policy (the "Travelers Policy") to SWAP, and Nationwide claimed that Ms. Belt had additional UM coverage under the Travelers Policy based onScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, 710 N.E.2d 1116. Ms. Rogers' car was specifically covered by the policy issued by Nationwide (the "Nationwide Policy"), and there is no dispute that Ms. Belt was an insured under the Nationwide Policy, as Ms. Belt was acting in the course and scope of her employment with Ms. Rogers at the time of the accident.
 {¶ 3} The parties admit that Ms. Belt was not acting in the course and scope of her employment with SWAP at the time of accident, and under the recent case of Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, she cannot claim UM benefits under the Travelers policy. For the reasons that follow, we reverse the judgment of the Mahoning County Court of Common Pleas and render judgment in favor of Travelers.
 SUMMARY OF FACTS AND PROCEDURAL POSTURE {¶ 4} The auto accident occurred on April 27, 1998, in Youngstown, Ohio. Ms. Belt was driving a 1985 Oldsmobile Cutlass owned by Darlene Rogers. Ms. Belt was in the process of making a left hand turn and was hit by a car driven by Tierre Collins. The tortfeasor was uninsured at the time of the accident.
 {¶ 5} There does not appear to be any dispute that Ms. Belt was employed by Darlene Rogers, that Ms. Belt was in the course and scope of her employment with Ms. Rogers at the time of accident, that Ms. Belt had permission to use Ms. Rogers' automobile, and that the Nationwide Policy specifically covered both the vehicle and Ms. Belt's use of the vehicle. The Nationwide Policy had a $500,000 UM limit.
 {¶ 6} Ms. Belt filed her complaint in the Mahoning County Court of Common Pleas on April 26, 1999. Nationwide filed a third-party complaint against Aetna (now Travelers) on August 28, 2000. Travelers had issued an automobile liability policy to SWAP that was in effect at the time of the accident and had a $500,000 UM limit.
 {¶ 7} Nationwide and Travelers both filed motions for summary judgment on the issue of the priority of the two policies as primary or excess insurance. Nationwide argued that its policy contained an "other insurance" clause that made its coverage excess to any other collectible insurance. (5/10/01 Motion for Summary Judgment.) In the alternative, Nationwide argued that both policies should pay the claim on a pro rata basis because of pro rata clauses in both policies. Travelers argued that its policy was solely an excess policy with respect to vehicles that SWAP did not own. Travelers argued that primary coverage attaches to the specific vehicle that is covered by the policy, rather than to the person covered, pursuant to Motorists Mut. Ins. Co.v. Lumberman's Mut. Ins. Co. (1965), 1 Ohio St.2d 105,205 N.E.2d 67. Travelers concluded that the Nationwide Policy was primary because it covered the specific vehicle driven by Ms. Belt.
 {¶ 8} On June 28, 2001, the trial court ruled that both policies were excess policies and that both would be applied on a pro rata basis.
 {¶ 9} On July 27, 2001, Travelers filed an appeal of this judgment, designated as Appeal No. 01 CA 138.
 {¶ 10} On September 6, 2001, this Court dismissed the appeal for lack of a final appealable order. We determined that there were some issues still pending before the trial court and that the June 28, 2001, judgment did not contain the, "no just reason for delay," language required by Civ.R. 54(B).
 {¶ 11} On January 30, 2002, Travelers was joined as a party defendant (previously it had only been a third-party defendant). The court also allowed Chicago Insurance Co. to be joined in the case as a defendant, as requested by a previous motion filed by Nationwide. The court granted Ms. Belt seven days to file an amended complaint in order to add Travelers and Chicago Insurance Co. as defendants. The amended complaint was filed on February 11, 2004. The record does not indicate that Chicago Insurance Co. was ever served with the amended complaint.
 {¶ 12} On April 15, 2002, the issues of negligence and damages were submitted to binding arbitration. On or about May 29, 2002, the arbitrators submitted their report. (See 6/5/02 Application to Confirm Arbitrator's Award.) Two of the three arbitrators concluded that Ms. Belt was 45% at fault for the accident, and one arbitrator concluded that she was more negligent than Tierre Collins for the accident. The arbitrators found that there was a total of $400,000 in damages, and they reduced the amount by 45% for a final damages award of $220,000.
 {¶ 13} On June 5, 2002, Ms. Belt filed a motion to confirm the arbitration award and reduce it to judgment. Also on June 5, 2002, Ms. Belt filed a motion for prejudgment interest.
 {¶ 14} On July 1, 2002, the trial court granted Ms. Belt's motion to confirm the arbitration award. The court ruled that the award, "is entered against defendants Nationwide Insurance Company and Aetna Casualty Surety Company of America, jointly and severally." (7/1/02 J.E.) Furthermore, the court held that it was reserving judgment on the issue of prejudgment interest.
 {¶ 15} On July 31, 2002, Travelers filed an appeal of the July 1, 2002, judgment entry. This appeal was designated as Appeal No. 02 CA 136.
 {¶ 16} Once again, on September 6th of 2002, this Court dismissed the appeal for lack of a final appealable order. The issue of prejudgment interest remained pending, and the July 1, 2002, judgment entry again did not contain the, "no just reason for delay," language required by Civ.R. 54(B).
 {¶ 17} On December 16, 2002, the trial court granted Ms. Belt's motion for prejudgment interest. The trial court granted prejudgment interest of 10% per annum from the date of the accident.
 {¶ 18} On January 15, 2003, Travelers filed an appeal of the December 16, 2002, judgment entry.
 {¶ 19} On July 23, 2003, after all appellate briefs had been filed, Nationwide filed a motion to dismiss the appeal for lack of a final appealable order. Nationwide argued that there are unresolved issues in this case, and that a new party (Chicago Insurance Co.) had been joined as a defendant. Nationwide also argued that the December 16, 2002, judgment did not contain the language required by Civ.R. 54(B).
 {¶ 20} On November 13, 2003, this Court notified the parties that the jurisdictional issue could be addressed at oral argument.
 FINAL APPEALABLE ORDER STATUS {¶ 21} Nationwide argues that there are no final appealable orders in this case because a new party was added to the case when the third amended complaint was filed and because there are unresolved issues concerning two umbrella insurance policies owned by SWAP and issued by Chicago Insurance Co. and Travelers. In rebuttal, Travelers argues that the July 1, 2002, judgment would have been a final appealable order except for the trial court's failure to rule on the prejudgment interest issue, and that this issue was resolved by the December 16, 2002, judgment entry. Travelers also points out that the trial court confirmed the arbitration award and rendered judgment against Nationwide and Travelers, jointly and severally, in the amount of $220,000. Travelers contends that there are no other issues for the trial court to resolve, and that the only other potential party in this case, i.e., Chicago Ins. Co., was never served with the complaint. Travelers believes that it will be denied justice if its appeal is dismissed for a third time.
 {¶ 22} It is clear that a court of appeals only has jurisdiction to review final and appealable orders as set forth in Section 3(B)(2), Article IV of the Ohio Constitution and R.C. § 2505.01 et seq. See Chef Italiano Corp. v. Kent State Univ.
(1989), 44 Ohio St.3d 86, 541 N.E.2d 64.
 {¶ 23} There is a specific statute that allows a party to appeal a trial court's confirmation of an arbitration award. R.C. § 2711.15 states:
 {¶ 24} "An appeal may be taken from an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding or from judgment entered upon an award."
 {¶ 25} The matter is more complicated than simply applying R.C. § 2711.15, because it is generally agreed that an appeal based on R.C. § 2711.15 must also satisfy the requirements of R.C. § 2505.02(B), which states, in pertinent part:
 {¶ 26} "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 {¶ 27} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 {¶ 28} "(2) An order that affects a substantial right made in a special proceeding * * *;"
 {¶ 29} The Ohio Supreme Court has held that a trial court judgment vacating an arbitration award and remanding the matter back to arbitration did not satisfy the requirements of a former version of R.C. § 2505.02. Stewart v. Midwestern Indem. Co.
(1989), 45 Ohio St.3d 124, 543 N.E.2d 1200, syllabus. Stewart
held that R.C. § 2711.15 must be read in pari materia with R.C. §2505.02. Id. at 126.
 {¶ 30} Stewart also held (in dicta) that Civ.R. 54(B) must be considered when determining the final appealable order status of an appeal under R.C. § 2711.15. Id. at 127.
 {¶ 31} Civ.R. 54(B) states, in pertinent part:
 {¶ 32} "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, * * *."
 {¶ 33} Nationwide believes that neither the December 16, 2002, judgment entry, nor any previous judgment entry, satisfies the requirements of Civ.R. 54(B). It is clear from the record that the trial court did not include the, "no just reason for delay," language of Civ.R. 54(B) in any of its judgment entries. If there were issues that remained pending before the trial court, then the lack of this language would normally prevent an appeal from going forward. The question is whether there are any claims or issues still pending before the trial court for resolution.
 {¶ 34} The Ohio Supreme Court has held that, "even though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable." General Acc. Ins. Co. v. Insurance Co. of NorthAmerica (1989), 44 Ohio St.3d 17, 21, 540 N.E.2d 266.
 {¶ 35} The only issues that arguably remain unresolved in this case are whether or not Ms. Belt should receiveScott-Pontzer coverage under two additional umbrella policies issued to SWAP. Since the Galatis case has made it clear that Ms. Belt cannot receive Scott-Pontzer coverage unless the accident occurred in the course and scope of her employment with the employer under whose insurance coverage is sought, and since Ms. Belt admits she was not acting in the course and scope of her employment with SWAP at the time of the accident, it is difficult to see how these issues can be considered as unresolved.
 {¶ 36} Furthermore, as Travelers argues, it does not appear that Chicago Insurance Co. is a party to this case. Even though the trial court appeared to join Chicago Ins. Co. to the case on January 30, 2002, the court also ordered Ms. Belt to file, within seven days, an amended complaint setting forth any claims against Chicago Ins. Co. Ms. Belt filed the third amended complaint twelve days later, on February 11, 2002, and included a claim against Chicago Ins. Co. based on an umbrella policy that had been issued to SWAP. This complaint was never served on Chicago Ins. Co., as reflected in the record. A trial court does not have jurisdiction to enter a judgment against an entity that has not been served with the complaint and has not made an appearance in the action. State ex rel. Ballard v. O'Donnell (1990),50 Ohio St.3d 182, 184, 553 N.E.2d 650.
 {¶ 37} There also do not appear to be any further issues for the trial court to resolve with respect to Nationwide and Travelers. The court has entered judgment against both of them jointly and severally in the amount of $220,000. Ms. Belt may enforce the judgment against either party or both parties, which is what the words "jointly and severally" signify. (7/1/02 J.E.) See, e.g., Pietro v. Leonetti (1971), 26 Ohio App.2d 221, 223,270 N.E.2d 660. The trial court also awarded Ms. Belt prejudgment and postjudgment interest, thus, those issues are no longer pending. Ms. Belt has not filed anything pursuant to this appeal and has not alleged the lack of a final appealable order. Nationwide's third-party claim against Travelers only involved the Travelers business automobile liability policy, and that claim has been resolved by the trial court. Nationwide did not file an amended complaint adding any parties or claims. Therefore, it appears that the trial court has resolved everything necessary to affect complete resolution in this case. The fact that Nationwide and Travelers could later dispute their exact share of joint and several liability when Ms. Belt attempts to enforce and collect her judgment does not negate the finality of her present judgment against the two insurance companies.
 {¶ 38} For these reasons, we hold that the December 16, 2002, judgment entry presents a final appealable order, and that all prior final orders in the case became immediately appealable as well.
 ASSIGNMENT OF ERROR NO. 1 {¶ 39} Appellant Travelers has asserted two assignments of error. The first assignment of error states:
 {¶ 40} "The trial court erred in holding that the Nationwide policy issued to Ms. Rogers provided excess coverage under its `other insurance' clause."
 {¶ 41} This first assignment of error involves the judgment entry of June 28, 2001, which granted summary judgment to Nationwide and overruled Travelers' motion for summary judgment. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. WillisDay Warehousing Co. (1976), 54 Ohio St.2d 64, 66, 375 N.E.2d 46; Civ.R. 56(C).
 {¶ 42} This assignment of error also involves the interpretation of the language of an insurance contract, which is also reviewed de novo by this Court. Dorsey v. Federal Ins.Co., 154 Ohio App.3d 568, 2003-Ohio-5144, 798 N.E.2d 47, at ¶ 12.
 {¶ 43} Although Travelers initially frames this issue as one of excess insurance versus primary insurance, the specific question that Travelers raises is whether Ms. Belt can be treated as a "named insured" under the Travelers Policy. The reason that the term "named insured" is important is because the Nationwide Policy contains an "excess insurance" provision that is only triggered if the insured is a "named insured" on another UM policy. (Nationwide Ohio UM Endorsement 2352A). If Ms. Belt is not a "named insured" on the Travelers Policy, then Nationwide cannot invoke its excess insurance clause, and (according to Travelers) this leaves Nationwide as the primary carrier. The $220,000 award granted to Ms. Belt is below the limits of the Nationwide Policy, leaving no liability for Travelers as the excess insurer.
 {¶ 44} The issue as framed by Travelers necessarily raises the fundamental question of whether Ms. Belt is an insured under the Travelers Policy. Obviously, if she is not an insured at all, she cannot be treated as a named insured. Ms. Belt's only connection to UM coverage under the Travelers Policy is by way of UM coverage imposed as a matter of law under Scott-Pontzer.
Under Scott-Pontzer, a corporate UM policy that defined the term "insured" by using the word "you" created an ambiguity, and this ambiguity gave rise to UM coverage for the employees of the corporation as a matter of law.
 {¶ 45} The holding in Scott-Pontzer has been dramatically curtailed by the recent Galatis decision issued by the Ohio Supreme Court. Galatis held that:
 {¶ 46} "Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. Additionally, where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as `other insureds' does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured." Id., 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256, at ¶ 62.
 {¶ 47} It is undisputed that Ms. Belt was not acting in the course and scope of her employment with SWAP at the time of accident, and therefore Ms. Belt could not have been aScott-Pontzer insured under the Travelers Policy that was issued to SWAP. If Ms. Belt was not an insured under the Travelers Policy, then Travelers cannot be treated as an excess or pro rata insurer. Although this is not the precise argument that Travelers has made on appeal, it is impossible to properly review Travelers' first assignment of error without referring toGalatis, and once Galatis is raised in this appeal it resolves the appeal.
 {¶ 48} It should be noted that Nationwide has not filed an appeal and it is apparently not raising any issue as to whether or not Ms. Belt is an insured under the Nationwide Policy.
 {¶ 49} Even if Galatis did not apply to the instant appeal, it appears that Travelers is correct for other reasons. The current holding of this Court (albeit a pre-Galatis holding) is that the term "named insured" is not synonymous with the term "insured" in the context of Scott-Pontzer coverage. See Gilesv. Simonds, 7th Dist. No. 02-CO-18, 2003-Ohio-1428, at ¶ 21. The specific excess insurance provision in the Nationwide Policy that was the basis of the trial court's decision reads as follows:
 {¶ 50} "If an insured other than you or a relative is a named insured * * * for uninsured motorists or underinsured motorists coverage under another policy, our coverage is excess to any such coverage. Our coverage will apply only in the amount by which the limit of coverage under this policy exceeds the limit of coverage of the policy or policies under which such insured is a named insured * * *." (Nationwide Ohio UM Endorsement 2352A.)
 {¶ 51} In Giles, this Court held that the term "named insured" refers to the names listed on the declarations page of the policy. Id. at ¶ 19. Ms. Belt is not listed anywhere in the Travelers Policy, and cannot be a named insured. If she is not a named insured, then the Nationwide excess insurance provision does not apply, and Nationwide would have to look elsewhere to find a reason for Travelers to share in paying UM benefits to Ms. Belt.
 {¶ 52} Nationwide attempts to further argue that other courts have allowed Scott-Pontzer carriers to share liability, on a pro rata basis, with the carrier that covers the specific vehicle involved in the accident. Travelers, on the other hand, argues that when there are two insurance policies, and one policy covers the vehicle and the other policy covers the person involved in the accident, the rule in Ohio is that insurance on the car is primary, which is sometimes stated as "insurance follows the car." Motorists Mut. Ins. Co., supra, 1 Ohio St.2d at 107,205 N.E.2d 67.
 {¶ 53} Nationwide cites only two cases to support its pro rata argument. The first case cited is Shaw v. State Farm Ins.Co., 8th Dist. No. 80471, 2002-Ohio-5330. Shaw has since been overturned by the Ohio Supreme Court on the basis of theGalatis decision. In re Uninsured Underinsured MotoristCoverage Cases, 100 Ohio St.3d 302, 2003-Ohio-5888,798 N.E.2d 1077. The other case cited by Nationwide is Marshall v. ColonialIns. Co., 11th Dist. No. 2001-T-0145, which was decided beforeShaw. Nationwide cites Marshall as having the same holding as in Shaw. Since Shaw has been reversed, we can safely assume that the same reasoning used in an earlier case is necessarily also overruled. Therefore, Nationwide does not provide any effective rebuttal authority to Travelers' argument that the coverage that the Nationwide Policy provided for the vehicle is primary. Ms. Belt's award of $220,000 is less than the $500,000 UM limits of the Nationwide Policy, and therefore, Travelers would not be liable for any part of the claim. Thus, under bothGalatis and Giles, the trial court judgment must be reversed.
 ASSIGNMENT OF ERROR NO. 2 {¶ 54} Appellant's second assignment of error states:
 {¶ 55} "The trial court erred in overruling the magistrate's decision to impose prejudgment interest to the date of the April 27, 1998 automobile accident."
 {¶ 56} Based on our analysis in Appellant's first assignment of error the issue of prejudgment interest is now moot.
 {¶ 57} In conclusion, the issue of whether or not Ms. Belt is an insured under the Travelers Policy is resolved by the recentGalatis case. Even if Galatis would not apply, there are other reasons for sustaining Travelers' first assignment of error based on this Court's recent Giles opinion. Travelers' second assignment of error is moot. The judgment of the trial court is hereby reversed and summary judgment granted to Travelers for the reason that Travelers is not liable to provide UM coverage for an accident involving an employee who was not acting in the course and scope of employment relating to the specific employer covered by the Travelers Policy.
Donofrio, J., concurs.
Vukovich, J., concurs.